**Law Office of Shmuel Klein, PC**
**113 Cedarhill Ave.**
**Mahwah, NJ 07430**
**(201) 529-3411**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| _____ x | |
| In Re: | Chapter 13 |
| Jerry M. and Vanessa Taylor | Bankruptcy Case No. 09-38410 |
| _____ x | |
| Jerry M. and Vanessa Taylor | |
| Plaintiffs, | Adversary Case No. 09-1204 |
| vs | |
| Aurora Loan Services | |
| Defendant, | |
| _____ x | |

<u>Plaintiff Answers to Defendant Interrogatories</u>

1. Identify all persons having knowledge of any facts relating to the Action and as to each person, specify in detail each and every fact within his or her knowledge.

<u>Response:</u> Jerry M. Taylor, Vanessa Taylor and Defendant Aurora Loans Services have complete knowledge of the actions of this case.

2. State whether you have obtained any statements, either oral or written, from any persons either a party or non-party to the action, which in any way are relevant to and/or are related to the Action. If yes, please state:

  a. The name, address, employer and occupation of the persons who gave the statements;

  b. The date this statement was obtained;

  c. If written, whether signed by the person;

  d. If oral, name and address of the person who obtained this statement;

  e. If recorded, the nature and present custodian of each recording;

    f.   Attach a copy hereto of the whole written statement; and

    g.   If oral, set forth completely the exact words utilized in rendering such
statement.

<u>Response:</u> In around July of 2009 I contacted Aurora Loan Services, requesting a
loan modification, without any explanation to why he was denied.

3.   State whether any admissions were made by any party to the Action, including his
or her representive, agent employee, officer, director, or former representative,
agent, employee, officer or director, concerning the subject matter of the Action.
If yes, please state:

    a.   Whether such admissions were written or oral;

    b.   The date, time and place made;

    c.   By whom and to whom made;

    d.   The exact words used; and

    e.   Attach a copy of any written admission.

<u>Response:</u> See Response to No. 2.

4.   Set forth all of the facts and circumstances that you believe support your claim
asserted in this Action and identify all documents, correspondence or communications
supporting your answer.

<u>Response:</u> See Response to No. 2

Breach of Contract, Defendant failed to comply with agreement of the Note and failed to
apply our Mortgage payments.

Negligence, Defendant failed to apply our monthly mortgage payments.

5.      Identify all written communication (including email) and/or oral communication

between any parties to the Action which refer to or relate to the matters specified in the

Complaint or which refer or relate to the subject matter of the Action. Please attach

copies of all documents embodying or referring or relating to such communications.

   Response: See Response to No. 2

6.      Identify all written communication (including email) and/or oral communication

between you and any person not a party to the Action, excluding privileged

communications with counsel, which refer to the subject of the Action. Please attach

copies of all documents embodying or referring or relating to such communication.

Response: See Response to No. 2

7.      Identify and attach hereto any and all documents relied upon or referred to by you

in preparing your answers to these interrogatories.

Response: The following documents where relied upon in answering these

interrogatories: The Mortgage, Note, Closing Documents and the "Qualified Written

Request" (QWR) and Defendant Responses to the QWR.

8.      State the names and addresses of all persons whom you expect to call as witnesses

at trial. Include in your description, the telephone numbers and addresses for the

witnesses and the facts to which each witness is expected to testify.

Response: Plaintiff's Jerry Taylor, Vanessa Taylor and Defendant Aurora Loan Services,

are expected to testify as witnesses.

9.      State the theory and state the basis for you allegation in Paragraph 13 of the

Complaint that you believe that you are being charged unauthorized late fees, that your

payments are being misapplied and that the mortgage account is not being properly

credited for payments of interest principal and escrow charges, and identify all
documents that support that contention.

Response: The Plaintiffs believes that they are being charged unauthorized late fees, that
their payments are being misapplied and that the mortgage account is not being properly
credited for payments of interest, principal and escrow charges. see the attached Account
History.

10.    State the theory and state the basis for your allegation in Paragraph 16 of the
Complaint that the response to the purported Qualified Written Request ("QWR") was
incomplete, and identify all documents that support that contention.

Response: The supporting documents for the responses of the QWR were not produced
and Defendant failed to respond to each question. See the attached QWR response from
Aurora Loan Services.

11.    State the theory and state the basis for your allegation in Paragraph 18 of the
Complaint that attachments were not included with the response to the purported
Qualified Written Request, and identify all attachments that you contend were not
included.

Response: When Defendant Aurora Loan Services answered to the QWR, they failed to
attach any supporting documents.

12.    State the theory and state the basis for your allegation in Paragraph 57 of the
Complaint that you suffered actual damages, identify all documents that support that
contention and provide an itemized statement of the actual damages that you claim to
have suffered.

Response: We have suffered monetary damages, as a result of Defendant's negligence, Breach of Contract, statuary damages and attorney fees.

13.    State the theory and state the basis for your allegation in Paragraph 60 of the Complaint that Defendant failed to comply with Section 2605 of Title 12 of the Untied States Code and failed to credit Plaintiffs for payments made on the mortgage, and identify all documents that support that contention

Response: See response to No. 9.

14.    State the theory and state the basis for your allegation in Paragraph 63 of the Complaint that Defendant has breached the contract, and did not apply payments pursuant to the note, and identify all documents that support the contention.

Response: Defendant failed to apply payments according to the note: The Note dated June 9, 2004, (paragraph 3) Payments (A) Time and Place of Payments: It states, "each monthly payment will be applied as of its scheduled due date and will be applied to interest before principle. See the attached Mortgage Note and Account History.

15.    State the theory and state the basis for your allegation in Paragraph 66 of the Complaint that Defendant negligently did not respond completely to the purported QWR and that Defendant negligently misapplied payments, and identify all documents that support that contention.

Response: Defendant has not fully answered the QWR, and failed to attach any supporting documents with their answers. Only after the Complaint was served, did Defendant send to our office a CD with the produce, event then it was still missing documents, after my attorney contacted them informing they are still missing some documents, a second CD was sent with the all supporting documents.

16    State the theory and state the basis for your allegation in Paragraph 67 of the

complaint that you have suffered losses, identify all documents that support that

contention and provide an itemized statement of the losses that you claim to have

suffered

Response:  We suffered monetary losses in result of Defendant's negligence to misapply

my Mortgage payments every month. See the attached Account history.

Dated: July ____ 2010

Jerry Taylor

Vanessa Taylor

**Law Office of Shmuel Klein, PC**
**113 Cedarhill Ave.**
**Mahwah, NJ 07430**
**(201) 529-3411**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

———————————————— x
In Re:                                          Chapter 13
Jerry M. and Vanessa Taylor              Bankruptcy Case No. 09-38410
———————————————— x
Jerry M. and Vanessa Taylor
          Plaintiffs,                       Adversary Case No. 09-1204
vs
Aurora Loan Services
          Defendant,
———————————————— x

### Plaintiff Answers to Defendant Document Demand

1. A true and exact copy of the entire report or reports, including drafts, rendered by

   any expert retained by you who is expected to testify at trail.

Response: Plaintiff has no such document in his possession at this time.

2. Any and all written or recorded statements secured or given by you regarding the

   action.

Response: See Documents Bated # 00001-00042

3. Any and all documents provided by you to any and all experts expected to testify

   at trail on your behalf.

Response: Plaintiff has no such document in his possession at this time.

4. All documents, communications, e-mails or other correspondence between you

   and Defendant

Response: See Document Bated: # 00038-00042

5. All documents, communications, e-mails or other correspondence between you and any predecessor of Defendant.

Response: See Documents Bates # 00001-000042

6. Adverse party statements.

Response: Plaintiff has no such document in his possession at this time.

7. Any documents that evidence refer or relate to any claims set forth by you in the Action.

Response: See Documents Bated # 00001-00042

8. Any and all other documents which embody or relate to any facts asserted in the action.

Response: See Document Bated # 00001-00042

9. All documents that you may introduce into evidence at trial.

Response: See Document attached.

10. Any and all documents that you may rely upon to substantiate your damage claims in the action.

Response: See Document Bated # 00002-00007

11. Copies of any and all payments made towards the Mortgage, including but not limited to cancelled checks (front and back), money order receipts, wire transfers, etc.

Response: See Document Bated # 00001

12. Copies of any and all payments made to the Bankruptcy trustee in any prior bankruptcy case filed by you.

Response: objection.

13  A true and correct copy of the purported QWR referred to in Paragraph 14 of the

Complaint.

Response: See Documents Bated # 00008-00011

14.  A true and correct copy of the responses to the purported QWR referred to in

Paragraph 16 of the Complaint, including any and all documents enclosed

therewith.

Response: See Documents Bated # 00012-00024

15.  A true and correct copy of the contract referred to in Paragraph 14 of the

Complaint.

Response: See Documents Bated # 00025-00037

Dated: July 29, 2010



000 1

```
                 CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 12/10/09
REQ BY PJK                                                    PAGE   2


JERRY M TAYLOR
LOAN NUMBER:

             ACTIVITY FOR PERIOD 01/01/01 - 12/09/09
PROCESS   DUE    TRANSACTION       TRANSACTION              EFFECTIVE DATE
DATE      DATE   CODE              DESCRIPTION              OF TRANSACTION
```

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT | CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 11-05-09  04-05  173  PAYMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 330.52 | * |
| | | | | 330.52- | SUSPENSE |
| 11-05-09  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 330.52- | 0.00 | 0.00 | 0.00 | | |
| 11-03-09  04-05  161  ESCROW ADVANCE | | | | | |
| 1,499.29 | 0.00 | 0.00 | 1499.29 | | |
| 11-03-09  10-09  313  CITY TAX | | | | | |
| 1,499.29- | 0.00 | 0.00 | 1499.29- | | |
| | | | 35586.11- | NEW PRINCIPAL/ESCROW BALANCES | |
| 10-23-09  00-00  631  PROPERTY PRESERVATION | | | | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 09-23-09  00-00  631  PROPERTY PRESERVATION | | | | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 08-27-09  00-00  631  PROPERTY PRESERVATION | | | | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 08-20-09  04-05  161  ESCROW ADVANCE | | | | | |
| 1,499.29 | 0.00 | 0.00 | 1499.29 | | |
| 08-20-09  07-09  313  CITY TAX | | | | | |
| 1,499.29- | 0.00 | 0.00 | 1499.29- | | |
| | | | 34086.82- | NEW PRINCIPAL/ESCROW BALANCES | |
| 08-03-09  00-00  631  PROPERTY PRESERVATION | | | | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 07-31-09  00-00  633  MISC. F/C AND B/R EXPENSES | | | | | |
| 90.00 | 0.00 | 0.00 | 0.00 | | |
| 06-30-09  00-00  631  PROPERTY PRESERVATION | | | | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 05-26-09  00-00  631  PROPERTY PRESERVATION | | | | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 05-14-09  00-00  631  PROPERTY PRESERVATION | | | | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 05-14-09  00-00  631  PROPERTY PRESERVATION | | | | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 04-28-09  00-00  631  PROPERTY PRESERVATION | | | | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 04-22-09  04-05  161  ESCROW ADVANCE | | | | | |
| 1,554.69 | 0.00 | 0.00 | 1554.69 | | |

000 2

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 12/10/09
REQ BY PJK                                                       PAGE    3


JERRY M TAYLOR
LOAN NUMBER:

               ACTIVITY FOR PERIOD 01/01/01 - 12/09/09
PROCESS    DUE    TRANSACTION         TRANSACTION              EFFECTIVE DATE
DATE       DATE   CODE                DESCRIPTION              OF TRANSACTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
TRANSACTION   PRIN PAID/            ESCROW PAID/ - - - - - - - OTHER - - - - - - -
  AMOUNT      BALANCE   INTEREST    BALANCE   AMOUNT  CODE/DESCRIPTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
04-22-09  04-09  313  CITY TAX
  1,554.69-       0.00      0.00   1554.69-
                                  32587.53-   NEW PRINCIPAL/ESCROW BALANCES
03-30-09  00-00  631  PROPERTY PRESERVATION
     12.00        0.00      0.00      0.00
02-27-09  00-00  631  PROPERTY PRESERVATION
     12.00        0.00      0.00      0.00
02-05-09  00-00  631  PROPERTY PRESERVATION
     12.00        0.00      0.00      0.00
01-26-09  00-00  633  MISC. F/C AND B/R EXPENSES
     95.00        0.00      0.00      0.00
01-12-09  04-05  161  ESCROW ADVANCE
  1,554.69        0.00      0.00   1554.69
01-12-09  01-09  313  CITY TAX
  1,554.69-       0.00      0.00   1554.69-
                                  31032.84-   NEW PRINCIPAL/ESCROW BALANCES
01-02-09  00-00  631  PROPERTY PRESERVATION
     12.00        0.00      0.00      0.00
12-03-08  00-00  631  PROPERTY PRESERVATION
     12.00        0.00      0.00      0.00
10-27-08  00-00  631  PROPERTY PRESERVATION
     12.00        0.00      0.00      0.00
10-16-08  04-05  161  ESCROW ADVANCE
  1,567.66        0.00      0.00   1567.66
10-16-08  10-08  313  CITY TAX
  1,567.66-       0.00      0.00   1567.66-
                                  29478.15-   NEW PRINCIPAL/ESCROW BALANCES
09-25-08  04-05  173  PAYMENT                                  09-24-08
    330.52        0.00      0.00      0.00   330.52   SUSPENSE
09-11-08  00-00  631  PROPERTY PRESERVATION
     12.00        0.00      0.00      0.00
08-12-08  04-05  161  ESCROW ADVANCE
  1,567.67        0.00      0.00   1567.67
08-12-08  07-08  313  CITY TAX
  1,567.67-       0.00      0.00   1567.67-
                                  27910.49-   NEW PRINCIPAL/ESCROW BALANCES
```

CUSTOMER ACCOUNT ACTIVITY STATEMENT           DATE 12/10/09

REQ BY PJK                                                    PAGE    4


JERRY M TAYLOR
LOAN NUMBER:

ACTIVITY FOR PERIOD 01/01/01 - 12/09/09

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | ------OTHER------ CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 08-08-08 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 05-31-08 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 05-05-08 | 04-05 | 168 | REPAY OF ESCROW ADVANCE | | |
| 0.00 | 0.00 | 0.00 | 350.00- | 350.00 | ADVANCE REFUND |
| 05-02-08 | 04-05 | 166 | MISCELLANEOUS ESCROW DEPOSIT | | |
| 0.00 | 0.00 | 0.00 | 350.00 | 350.00- | SUSPENSE |
| | | | 26342.82- | | NEW PRINCIPAL/ESCROW BALANCES |
| 05-01-08 | 04-05 | 161 | ESCROW ADVANCE | | |
| 1,457.19 | 0.00 | 0.00 | 1457.19 | | |
| 05-01-08 | 04-08 | 313 | CITY TAX | | |
| 1,457.19- | 0.00 | 0.00 | 1457.19- | | |
| | | | 26692.82- | | NEW PRINCIPAL/ESCROW BALANCES |
| 04-29-08 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 04-24-08 | 04-05 | 173 | PAYMENT | | |
| 350.00 | 0.00 | 0.00 | 0.00 | 350.00 | SUSPENSE |
| 04-03-08 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 03-13-08 | 04-05 | 161 | ESCROW ADVANCE | | |
| 1,584.69 | 0.00 | 0.00 | 1584.69 | | |
| 03-13-08 | 10-07 | 313 | CITY TAX | | |
| 1,584.69- | 0.00 | 0.00 | 1584.69- | | |
| | | | 25235.63- | | NEW PRINCIPAL/ESCROW BALANCES |
| 03-04-08 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 01-31-08 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 01-25-08 | 04-05 | 161 | ESCROW ADVANCE | | |
| 1,541.72 | 0.00 | 0.00 | 1541.72 | | |
| 01-25-08 | 01-08 | 313 | CITY TAX | | |
| 1,541.72- | 0.00 | 0.00 | 1541.72- | | |
| | | | 23650.94- | | NEW PRINCIPAL/ESCROW BALANCES |
| 12-27-07 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 400.00 | 0.00 | 0.00 | 0.00 | | |

```
              CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 12/10/09
REQ BY PJK                                                 PAGE   5


JERRY M TAYLOR
LOAN NUMBER:

           ACTIVITY FOR PERIOD 01/01/01 - 12/09/09
PROCESS   DUE    TRANSACTION        TRANSACTION              EFFECTIVE DATE
DATE      DATE   CODE               DESCRIPTION              OF TRANSACTION
---------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/       ESCROW PAID/ -----------OTHER------------
   AMOUNT       BALANCE   INTEREST   BALANCE   AMOUNT  CODE/DESCRIPTION
---------------------------------------------------------------------------
12-20-07  04-05  147  MISAPPLICATION REVERSAL
      0.00          0.00       0.00     0.00   3,580.00-  SUSPENSE
12-10-07  04-05  173  PAYMENT                                         12-03-07
   3,580.00         0.00       0.00     0.00   3,580.00   SUSPENSE
12-06-07  00-00  631  PROPERTY PRESERVATION
     12.00          0.00       0.00     0.00
12-04-07  00-00  630  ATTORNEY ADVANCES
    350.00          0.00       0.00     0.00
11-16-07  00-00  633  MISC. F/C AND B/R EXPENSES
     95.00          0.00       0.00     0.00
11-16-07  00-00  630  ATTORNEY ADVANCES
    250.00          0.00       0.00     0.00
10-30-07  00-00  631  PROPERTY PRESERVATION
     12.00          0.00       0.00     0.00
09-26-07  04-05  161  ESCROW ADVANCE
    891.22          0.00       0.00   891.22
09-26-07  10-07  351  HAZARD INSURANCE DISBURSEMENT
    891.22-         0.00       0.00   891.22-
                                       22109.22-  NEW PRINCIPAL/ESCROW BALANCES
08-30-07  00-00  631  PROPERTY PRESERVATION
     12.00          0.00       0.00     0.00
08-21-07  04-05  161  ESCROW ADVANCE
     25.90          0.00       0.00    25.90
08-21-07  00-00  301  MISCELLANEOUS ESCROW DISBURSEMENT
     25.90-         0.00       0.00    25.90-
                                       21218.00-  NEW PRINCIPAL/ESCROW BALANCES
08-21-07  00-00  766  MISC. REPAYMENT
     25.90          0.00       0.00     0.00
08-17-07  04-05  168  REPAY OF ESCROW ADVANCE
      0.00          0.00       0.00    25.90-     25.90  ADVANCE REFUND
08-17-07  04-05  173  PAYMENT
      0.00          0.00       0.00    25.90      25.90-  SUSPENSE
                                       21192.10-  NEW PRINCIPAL/ESCROW BALANCES
08-08-07  04-05  161  ESCROW ADVANCE
   1,584.70         0.00       0.00  1584.70
08-08-07  07-07  313  CITY TAX
   1,584.70-        0.00       0.00  1584.70-
                                       21218.00-  NEW PRINCIPAL/ESCROW BALANCES
```

REQ BY PJK                    CUSTOMER ACCOUNT ACTIVITY STATEMENT                    DATE 12/10/09
                                                                                        PAGE   6

JERRY M TAYLOR
LOAN NUMBER:

                        ACTIVITY FOR PERIOD 01/01/01 - 12/09/09

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | OTHER CODE/DESCRIPTION |

| PROCESS DATE | DUE DATE | CODE | DESCRIPTION | | |
|---|---|---|---|---|---|
| 07-24-07 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 400.00 | 0.00 | 0.00 | 0.00 | | |
| 06-19-07 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 1,000.00 | 0.00 | 0.00 | 0.00 | | |
| 06-19-07 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 10.12 | 0.00 | 0.00 | 0.00 | | |
| 06-19-07 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 35.00 | 0.00 | 0.00 | 0.00 | | |
| 06-19-07 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 35.00 | 0.00 | 0.00 | 0.00 | | |
| 06-05-07 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 05-08-07 | 00-00 | 633 | MISC. F/C AND B/R EXPENSES | | |
| 95.00 | 0.00 | 0.00 | 0.00 | | |
| 04-27-07 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 04-24-07 | 04-05 | 161 | ESCROW ADVANCE | | |
| 1,498.73 | 0.00 | 0.00 | 1498.73 | | |
| 04-24-07 | 04-07 | 313 | CITY TAX | | |
| 1,498.73- | 0.00 | 0.00 | 1498.73- | | |
| | | | | 19633.30- | NEW PRINCIPAL/ESCROW BALANCES |
| 03-29-07 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 03-06-07 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 01-23-07 | 00-00 | 631 | PROPERTY PRESERVATION | | |
| 12.00 | 0.00 | 0.00 | 0.00 | | |
| 01-22-07 | 04-05 | 161 | ESCROW ADVANCE | | |
| 1,498.73 | 0.00 | 0.00 | 1498.73 | | |
| 01-22-07 | 01-07 | 313 | CITY TAX | | |
| 1,498.73- | 0.00 | 0.00 | 1498.73- | | |
| | | | | 18134.57- | NEW PRINCIPAL/ESCROW BALANCES |
| 01-18-07 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 150.00 | 0.00 | 0.00 | 0.00 | | |
| 01-18-07 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 250.00 | 0.00 | 0.00 | 0.00 | | |

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 12/10/09
REQ BY PJK                                                       PAGE    7


JERRY M TAYLOR
LOAN NUMBER:

                 ACTIVITY FOR PERIOD 01/01/01 - 12/09/09
PROCESS    DUE    TRANSACTION           TRANSACTION             EFFECTIVE DATE
DATE       DATE   CODE                  DESCRIPTION             OF TRANSACTION
-------------------------------------------------------------------------------
  TRANSACTION  PRIN PAID/          ESCROW PAID/ -----------OTHER------------
    AMOUNT       BALANCE   INTEREST   BALANCE   AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------------
12-27-06  00-00  631  PROPERTY PRESERVATION
      12.00         0.00     0.00      0.00
```

000 7        033

Law Office of Shmuel Klein, PC
113 Cedarhill Ave.
Mahwah, NJ 07430
(201) 529-3411

FILE COPY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-------------------------------------------x
Jerry & Vanessa Taylor                          Case No. 09-38410
                                                Chapter 13

     Debtor,

-------------------------------------------x
November 19, 2009

Aurora Loan Services
10350 Park Meadows Drive
Littleton, CO 80124

     &larr;    7008 2810 0000 2614 5406

     *Certified and mailed on 12/1/09*

   Re:  Jerry & Vanessa Taylor
        148 Hamilton Road
        Tinton Falls, NJ 07724

Loan No.

Dear Sir or Madam:

    I have been retained by the above captioned person with respect to a pending dispute
s/he has with Mortgage Lender, and/or any other holder and/or servicer of this loan
(collectively, "Lender"). My client has reported to me that they believe many mortgage
payments have been improperly applied or not applied at all. We further believe that
Lender may have misapplied Trustee disbursements. Furthermore, Lender may have
charged bankruptcy related fees, which may not have been approved by the Bankruptcy
Court. Please treat this letter as a "Qualified Written Request" under the Federal
Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C.
2605(e). This request is made on behalf of my client, the above-named debtor, based on
the pending dispute with your client. Specifically, I am requesting the following
information:

    1. A complete and itemized statement of the loan history from the date of the loan to
the date of this letter including, but not limited to, all receipts by way of payment or
otherwise and all charges to the loan in whatever form. This history should include the
date of each and every debit and credit to any account related to this loan, the nature and
purpose of each such debit and credit, and the name and address of the payee of any type
of disbursement related to this account.

    2. A complete and itemized statement of all advances or charges against this loan for
any purpose that are not reflected on the loan history transaction statement provided in
answer to question #1.

3. A complete and itemized statement of the escrow account of the loan, if any, from the date of the loan to the date of this letter, including, but not limited to, any receipts or disbursements with respect to real estate property taxes, fire or hazard insurance, flood insurance, mortgage insurance, credit insurance, or any other insurance product.

4. Have you purchased and charged to the account any Vendor's Single Interest Insurance?

5. A complete and itemized statement from the date of the loan to the date of this letter of any forced-placed insurance and expenses related thereto, related in any way to this loan.

6. A complete and itemized statement from the date of the loan to the date of this letter of any suspense account entries and/or any corporate advance entries related in any way to this loan.

7. A complete and itemized statement from the date of the loan to the date of this letter of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

8. Identify the provision under the Deed of Trust and/or note that authorizes charging each and every such fee against the loan of the debtors.

9. Please attach copies of all property inspection reports and appraisals.

10. A complete copy of any key loan transaction report or reports and any reports indicating any charges for any "add on products" sold to the debtors in connection with this loan from the date of the loan to the date of this letter.

11 A complete and itemized statement of any and all post-petition arrears including each month in which the default occurred, and the amount of each monthly default.

12. A complete and itemized statement of any late charges to this loan from the date of this loan to the date of this letter.

13. The amount, if applicable, of any "satisfaction fees."

14. A complete and itemized statement from the date of the loan to the date of this letter of any fees incurred to modify, extend, or amend the loan or to defer any payment due under the terms of the loan.

15. The current amount needed to pay-off the loan in full.

16. A full and complete comprehensible definitional dictionary of all transaction codes and other similar terms used in the statements requested above

17. A complete and itemized statement of any funds deposited in any post-petition suspension account(s) or corporate advance account(s), including, but not limited to, the balance in any such account or accounts and the nature, source and date of any and all funds deposited in such account or accounts.

18. A complete and itemized statement from the date of this loan to the date of this letter of the amount, payment date, purpose and recipient of all foreclosure expenses, NSF check charges, legal fees, attorney fees, professional fees and other expenses and costs that have been charged against or assessed to this mortgage.

19. A complete and itemized statement of the amount, payment date, purpose and recipient of all fees for the preparation and filing of the original proof of claim, any amended proofs of claim, or any supplemental proofs of claim in this case.

20. The full name, address and phone number of the current holder of this debt including the name, address and phone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act, which requires the servicer to identify the holder of the debt.

21. The full name, address, and phone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers, or special servicers for the underlying mortgage debt.

22. A copy of any mortgage Pooling and Servicing Agreement and all Disclosure Statements provided to any Investors with respect to any mortgage-backed security trust or other special purpose vehicle related to the said Agreement and any and all Amendments and Supplements thereto.

23. If a copy of the Pooling and Servicing Agreement has been filed with the SEC, provide a copy of SEC Form 8k and the Prospectus Supplement, SEC Form 424b5.

24. The name, address and phone number of any Trustee under any pooling or servicing agreement related to this loan.

25. A copy of the Prospectus offered to investors in the trust.

26. Copies of all servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements with respect to this account.

27. All written loss-mitigation rules and work-out procedures related to any defaults regarding this loan and similar loans.

28. The procedural manual used with respect to the servicing or sub-servicing of this loan.

29. A summary of all fixed or standard legal fees approved for any form of legal services rendered in connection with this account.

30. Is this loan subject to any Electronic Tracking Agreement? If the answer is yes, then state the full name and address of the Electronic Agent and the full name and address of the Mortgage Electronic Registration System.

31. Is the servicing of this loan provided pursuant to any type of mortgage electronic registration system? If the answer is yes, then attach a copy of the mortgage electronic registration system procedures manual.

32. A copy of the LSAMS Transaction History Report for the debtors' mortgage loan account, with a detailed description of all fee codes.

33. Is this a MERS Designated Mortgage Loan? If the answer is yes, then identify the electronic agent and the type of mortgage electronic system used by the agent.

34. Is this mortgage part of a Mortgage Warehouse Loan? If so, then state the full name and address of the Lender and attach a copy of the Warehouse Loan Agreement.

35. Upon any default or notice of default, state whether or not the Mortgage Warehouse Lender has the right to override any servicers or sub-servicers and provide instructions directly to the Electronic Agent? If the answer is yes, then specifically identify the legal basis for such authority.

36. Is this mortgage part of a Whole Loan Sale Agreement? If the answer is yes, then state the name and address of the Purchaser, the Custodian, the Trustee, the Electronic Agent and any Servicer or Sub-Servicers.

37. Please state the full name and address of any attorney you have retained to provide any legal services in this case within six (6) months of the petition date or at any time post-petition.

You should be advised that you must acknowledge receipt of this qualified written request within 20 business days, pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).

You should also be advised that the debtor herein will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein. The debtor also reserves the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code.

Sincerely,

Shmuel Klein
Law Office of Shmuel Klein, PC
113 Cedarhill Ave.
Mahwah, NJ 07430
(201) 529-3411

# Kahrl Wutscher LLP

4035 Wisconsin Avenue, NW
Wisconsin Building
Washington, DC 20016
Tel  (202) 621-9559
Fax (202) 621-9543
www.krw-llp.com

**Gabriel Assaad**
*Of Counsel*
Direct Dial  (202) 841-0649
GAssaad@kahrlwutscherllp.com

January 4, 2010

**Via First Class Mail**

Jerry M. and Vanessa H. Taylor
c/o Law Offices of Shmuel Klein
113 Cedarhill Avenue
Mahwah, NJ 07430

> **RE:**  **Purported Qualified Written Request**
> **Borrower: Jerry M. and Vanessa H. Taylor**
> **Property Address: 148 Hamilton Road, Tinton Falls, NJ 07724**
> **Account No.**

Dear Jerry and Vanessa Taylor:

We represent Aurora Loan Services LLC ("Aurora") in connection with the above-referenced matter. This is not an attempt to collect a debt. This letter responds to your purported "qualified written request" dated, but not received on, November 19, 2009.

As you know, Aurora has previously provided you with extensive information and disclosures regarding the loan or debt referenced above. Nevertheless, **please read the following disclosures carefully:**

> This law firm and its lawyers are not debt collectors, and this is not an attempt to collect any debt. However, any information obtained may be used for the purpose of debt collection.
>
> A payoff statement for this debt, which will indicate the amount of the debt and related information, is being generated and will be provided to you under separate cover. The payoff statement includes important additional information.
>
> Please send any payment to Aurora, at the address indicated on the payoff statement.
>
> Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater than the amount shown above. Hence, if you pay the amount shown above, an adjustment may be necessary after Aurora receives your payment, in which event Aurora will inform you before depositing any check for collection.

CALIFORNIA - ILLINOIS - WASHINGTON, D.C

00012    014

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 2 of 13

For simple factual inquiries regarding the servicing of the loan(s) at issue, please contact Aurora's Customer Service Help Desk at:

> Aurora Customer Service
> 2617 College Park
> PO Box 1706
> Scottsbluff, NE 69363-1706
> (800)-550-0508

Unless you dispute the validity of the debt in writing, or any portion thereof, within thirty days after receipt of the notice, the debt will be assumed to be valid

Aurora has the right to enforce the Note evidencing the debt, and has the right to receive payment of the debt for and on behalf of the owner of the debt.

The name of the current owner of the debt is: Lehman Brothers Holdings, Inc., 745 Seventh Avenue, 7th Floor, New York, NY 10019

We include with this letter various documents verifying and evidencing the debt, including but not limited to copies of the note, security instrument, payoff statement, and payment history.

The name and address of the original creditor is: Equity Financial Inc., 204 Route 18, East Brunswick, NJ 08816.

Please note that this letter and the related documents are provided for informational purposes only, and in response to your inquiry. If you are making payments on the debt pursuant to a Chapter 13 bankruptcy plan, please also note that the documents may not reflect developments that may recently have occurred in connection with your Chapter 13 bankruptcy. In such a case, please contact us for the most up to date information.

Section 6 of RESPA (12 U.S.C. § 2605) requires that a "qualified written request" must relate to the servicing of the subject loan, and should include a statement of the reasons the borrower believes the account is in error. Many of your questions do not relate to the servicing of this particular loan, and request documents rather than information as allowed by the statute.

Similarly, please note that Aurora is only the servicer of the subject loan, that the questions and allegations relating to the origination of the loan are not within its purview, and that in any event you should submit a loan modification application in accordance with the

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 3 of 13

instructions provided. In fact, your letter fails to allege that any specific error exists with respect to the servicing of the loan, but instead makes generalized, conclusory allegations primarily regarding the lending industry as a whole.

To the extent that statements in your letter consist of allegations of wrongdoing of any nature by Aurora, all such allegations are denied.

Nevertheless, subject to and without waiving any objections, Aurora responds to your requests as follows:

*Request: A complete and itemized statement of the loan history from the date of the loan to the date of this letter including, but not limited to, all receipts by way of payment or otherwise and all charges to the loan in whatever form. This history should include the date of each and every debit and credit to any account related to this loan, the nature and purpose of each such debit and credit, and the name and address of the payee of any type of disbursement related to this account.*

**Response:** Subject to and without waiving any objections, Aurora refers you to the copy of the payment history enclosed with this letter. If you have any questions concerning any specific entry on the payment history, please do not hesitate to contact Aurora as indicated in this letter.

*Request: A complete and itemized statement of all advances or charges against this loan for any purpose that are not reflected on the loan history transaction statement provided in answer to question #1.*

**Response:** Subject to and without waiving any objections, Aurora refers you to the copy of the payment history enclosed with this letter. If you have any questions concerning any specific entry on the payment history, please do not hesitate to contact Aurora as indicated in this letter.

*Request: A complete and itemized statement of the escrow account of the loan, if any, from the date of the loan to the date of this letter, including, but not limited to, any receipts or disbursements with respect to real estate property taxes, fire or hazard insurance, flood insurance, mortgage insurance, credit insurance, or any other insurance product.*

**Response:** Subject to and without waiving any objections, Aurora refers to you to the documents enclosed in this letter for any documents responsive to this request. If additional documents are located, they will be forwarded to you under separate cover. Should you have any questions, or require assistance with interpreting and comprehending the documents provided, please call or contact Aurora as indicated in this letter.

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 4 of 13

*Request: Have you purchased and charged to the account any Vendor's Single Interest Insurance?*

**Response:** Subject to and without waiving any objections, Aurora refers to you to the documents enclosed in this letter for any documents responsive to this request. If additional documents are located, they will be forwarded to you under separate cover. Should you have any questions, or require assistance with interpreting and comprehending the documents provided, please call or contact Aurora as indicated in this letter.

*Request: A complete and itemized statement from the date of the loan to the date of this letter of any forced-placed insurance and expenses related thereto, related in any way to this loan.*

**Response:** Subject to and without waiving any objections, Aurora refers to you to the documents enclosed in this letter for any documents responsive to this request. If additional documents are located, they will be forwarded to you under separate cover. Should you have any questions, or require assistance with interpreting and comprehending the documents provided, please call or contact Aurora as indicated in this letter.

*Request: A complete and itemized statement from the date of the loan to the date of this letter of any suspense account entries and/or any corporate advance entries related in any way to this loan.*

**Response:** Subject to and without waiving any objections, Aurora refers to you to the documents enclosed in this letter for any documents responsive to this request. If additional documents are located, they will be forwarded to you under separate cover. Should you have any questions, or require assistance with interpreting and comprehending the documents provided, please call or contact Aurora as indicated in this letter.

*Request: A complete and itemized statement from the date of the loan to the date of this letter of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.*

**Response:** Subject to and without waiving any objections, Aurora refers to the documents enclosed in this letter for any documents responsive to this request. If additional documents are located, they will be forwarded to you under separate cover. Should you have any questions, or require assistance with interpreting and comprehending the documents provided, please call or contact Aurora as indicated in this letter.

# Kahrl Wutscher LLP

*Request: Identify the provision under the Deed of Trust and/or note that authorizes charging each and every such fee against the loan of the debtors*

**Response:** Subject to and without waiving any objections, Aurora refers you to the copy of the Borrower's Note and Security Instrument enclosed with this letter; specifically, without limitation, see paragraphs 1, 2, 14, and 19 of the Security Instrument, and, without limitations, paragraph 7 of the Note.

*Request: Please attach copies of all property inspection reports and appraisals*

**Objection:** Aurora objects to this request to the extent that it seeks documents that are privileged, proprietary or documents for which borrower lacks privity. Aurora further states that portions of this request are not related to the actual servicing of the loan. Subject to and without waiving any objections, Aurora refers you to the documents enclosed with this letter for any nonprivileged, nonproprietary documents responsive to this request.

*Request: A complete and itemized statement of any and all post-petition arrears including each month in which the default occurred, and the amount of each monthly default*

**Objection:** This request is not related to the actual servicing of the loan and therefore exceeds the discovery permitted by Section 6 of RESPA. Moreover, this request is vague and ambiguous. Aurora is not able to discern what is intended by the phrase "post-petition arrears" and is unable to answer without further clarification from you. Subject to and without waiving any objections, please see the loan documents enclosed with this letter. Should you have any questions regarding these documents, please do not hesitate to contact Aurora as indicated in this letter.

*Request: A complete and itemized statement of any late charges to this loan from the date of this loan to the date of this letter*

**Response:** Subject to and without waiving any objections, please see the loan documents enclosed with this letter for any documents responsive to this request. If additional documents are located, they will be forwarded to you under separate cover. Should you have any questions, or require assistance with interpreting and comprehending the documents provided, please call or contact Aurora as indicated in this letter.

*Request: The amount, if applicable, of any "satisfaction fees."*

**Response:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern

# Kahrl Wutscher LLP

Gabriel Assaad
*Of Counsel*

what is intended by the term "satisfaction fees" as it relates to this loan, and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. Nevertheless, subject to and without waiving any objection, Aurora refers you to the loan documents enclosed with this letter for any documents that may be responsive to this request. Should you have any questions interpreting the loan documents, please do not hesitate to call Aurora as indicated in this letter.

*Request: A complete and itemized statement from the date of the loan to the date of this letter of any fees incurred to modify, extend, or amend the loan or to defer any payment due under the terms of the loan.*

**Objection:** This request is overbroad and unduly burdensome. Aurora also states that the information requested may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Nevertheless, subject to and without waiving any objections, Aurora refers to the documents enclosed with this letter.

*Request: The current amount needed to pay-off the loan in full.*

**Response:** Subject to and without waiving further objection, please see the payoff statement enclosed with this letter.

*Request: A full and complete comprehensible definitional dictionary of all transaction codes and other similar terms used in the statements requested above.*

**Response:** Aurora states that the information requested is proprietary in nature, and the information does not relate to any issue(s) raised by you with respect to the servicing of the loan. Should you have any questions, or require assistance with interpreting the documents provided, please contact Aurora as indicated in this letter.

*Request: A complete and itemized statement of any funds deposited in any post-petition suspension account(s) or corporate advance account(s), including, but not limited to, the balance in any such account or accounts and the nature, source and date of any and all funds deposited in such account or accounts.*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "post-petition suspense account entries" and/or "corporate advance entries," and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential,

# Kahrl Wutscher LLP

Gabriel Assaad
*Of Counsel*

and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. Nevertheless, subject to and without waiving any objection, Aurora refers you to the loan documents enclosed with this letter for any documents that may be responsive to this request. Should you have any questions interpreting the loan documents, please do not hesitate to call Aurora as indicated in this letter.

**Request:** *A complete and itemized statement from the date of this loan to the date of this letter of the amount, payment date, purpose and recipient of all foreclosure expenses, NSF check charges, legal fees, attorney fees, professional fees and other expenses and costs that have been charged against or assessed to this mortgage*

**Objection:** This request is overbroad and unduly burdensome. Aurora also states that the information requested may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Nevertheless, subject to and without waiving any objections, Aurora refers to the documents enclosed with this letter.

**Request:** *A complete and itemized statement of the amount, payment date, purpose and recipient of all fees for the preparation and filing of the original proof of claim, any amended proofs of claim, or any supplemental proofs of claim in this case*

**Response:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "proof of claim" as it relates to this loan, and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. Nevertheless, subject to and without waiving any objection, Aurora refers you to the loan documents enclosed with this letter for any documents that may be responsive to this request. Should you have any questions interpreting the loan documents, please do not hesitate to call Aurora as indicated in this letter.

**Request:** *The full name, address and phone number of the current holder of this debt including the name, address and phone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(0(2) of the Truth In Lending Act, which requires the servicer to identify the holder of the debt.*

**Response:** Please see the disclosures at the beginning of this letter.

**Request:** *The name, address and phone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or special servicers for the underlying mortgage debt*

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

**Objection:** Aurora states that it acquired the servicing rights originally held by the original lender identified in the disclosures at the beginning of this letter

*Request: A copy of any mortgage Pooling and Servicing Agreement and all Disclosure Statements provided to any Investors with respect to any mortgage-backed security trust or other special purpose vehicle related to the said Agreement and any and all Amendments and Supplements thereto*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by this request, and therefore is not able to respond. Aurora requests that you please provide further clarification in order that we may determine whether additional response is warranted. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan and therefore exceeds the discovery

*Request: If a copy of the Pooling and Servicing Agreement has been filed with the SEC, provide a copy of SEC Form 8k and the Prospectus Supplement, SEC Form 424b5.*

**Objection:** Aurora states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan and therefore exceeds the discovery permitted by the Section 6 of RESPA. Moreover, subject to and without waiving any objection, Aurora states that the information requested is proprietary, confidential, and/or otherwise protected from disclosure and dissemination and the borrower has no privity of contract with respect to the requested agreement. Subject to and without waiving any objections, and to the extent a response may be necessary, Aurora refers to the information and documents publicly available through the "EDGAR" system on the United States Securities and Exchange Commission's website, http://www.sec.gov/edgar.shtml.

*Request: The name, address and phone number of any Trustee under any pooling or servicing agreement related to this loan*

**Response:** See objection to Request above.

*Request: A copy of the Prospectus offered to investors in the trust*

**Objection:** Aurora states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan and therefore exceeds the discovery permitted by the Section 6 of RESPA. Moreover, subject to and without waiving any objection, Aurora states that the information requested is proprietary, confidential, and/or otherwise protected from disclosure and dissemination and the borrower has no privity of contract with respect to the requested

# Kahrl Wutscher LLP

Gabriel Assaad
*Of Counsel*

Page 9 of 13

agreement. Subject to and without waiving any objections, and to the extent a response may be necessary, Aurora refers to the information and documents publicly available through the "EDGAR" system on the United States Securities and Exchange Commission's website, http://www.sec.gov/edgar.shtml.

**Request:** *Copies of all servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements with respect to this account.*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by this request, and therefore is not able to respond. Aurora requests that you please provide further clarification in order that we may determine whether additional response is warranted. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan and therefore exceeds the discovery permitted by the Section 6 of RESPA. Moreover, subject to and without waiving any objection, Aurora states that the information requested is proprietary, confidential, and/or otherwise protected from disclosure and dissemination and the borrower has no privity of contract with respect to the requested agreement. Aurora requests that you provide a confidentiality agreement.

**Request:** *All written loss-mitigation rules and work-out procedures related to any defaults regarding this loan and similar loans.*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by this request, and therefore is not able to respond. Aurora requests that you please provide further clarification in order that we may determine whether additional response is warranted.

**Request:** *The procedural manual used with respect to the servicing or sub-servicing of this loan.*

**Response:** Aurora states that the information requested is proprietary in nature, and the information does not relate to any issue(s) raised by you with respect to the servicing of the loan. Should you have any questions, or require assistance with interpreting the documents provided, please contact Aurora as indicated in this letter.

**Request:** *A summary of all fixed or standard legal fees approved for any form of legal services rendered in connection with this account.*

**Objection:** Aurora objects to this request on the basis that it seeks information protected by the attorney-client privilege.

00020

022

# Kahrl Wutscher LLP

Gabriel Assaad
*Of Counsel*

Page 10 of 13

*Request: Is this loan subject to any Electronic Tracking Agreement? If the answer is yes, then state the full name and address of the Electronic Agent and the full name and address of the Mortgage Electronic Registration System*

**Objection:** Aurora states that the information requested is not available, the borrower has no privity of contract with respect to the requested agreement, and the information does not relate to the servicing of the loan. The loan is registered on MERS, an entity that can be contacted at the address and phone number listed on the enclosed Security Instrument.

*Request: Is the servicing of this loan provided pursuant to any type of mortgage electronic registration system? If the answer is yes, then attach a copy of the mortgage electronic registration system procedures manual.*

**Response:** Aurora states that the information requested is proprietary in nature, and the information does not relate to any issue(s) raised by you with respect to the servicing of the loan. Should you have any questions, or require assistance with interpreting the documents provided, please contact Aurora as indicated in this letter.

*Request: A copy of the LSAMS Transaction History Report for the debtors' mortgage loan account, with a detailed description of all fee codes.*

**Response:** Aurora states that the information requested is proprietary in nature, and the information does not relate to any issue(s) raised by you with respect to the servicing of the loan. Should you have any questions, or require assistance with interpreting the documents provided, please contact Aurora as indicated in this letter.

*Request: Is this a MERS Designated Mortgage Loan? If the answer is yes, then identify the electronic agent and the type of mortgage electronic system used by the agent.*

**Objection:** Aurora states that the information requested is not available, the borrower has no privity of contract with respect to the requested agreement, and the information does not relate to the servicing of the loan. The loan is registered on MERS, an entity that can be contacted at the address and phone number listed on the enclosed Security Instrument.

*Request: Is this mortgage part of a Mortgage Warehouse Loan? If so, then state the full name and address of the Lender and attach a copy of the Warehouse Loan Agreement.*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "Mortgage Warehouse Loan" and therefore is not able to respond. Aurora requests that you please provide further clarification in order that we may determine

00021

023

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

whether additional response is warranted. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan and therefore exceeds the discovery permitted by the Section 6 of RESPA. Moreover, subject to and without waiving any objection, Aurora states that the information requested is proprietary, confidential, and/or otherwise protected from disclosure and dissemination and the borrower has no privity of contract with respect to the requested agreement. Aurora requests that you provide a confidentiality agreement.

*Request: Upon any default or notice of default, state whether or not the Mortgage Warehouse Lender has the right to override any servicers or sub-servicers and provide instructions directly to the Electronic Agent? If the answer is yes, then specifically identify the legal basis for such authority.*

**Objection:** See response to request #33.

*Request: Is this mortgage part of a Whole Loan Sale Agreement? If the answer is yes, then state the name and address of the Purchaser, the Custodian, the Trustee, the Electronic Agent and any Servicer or Sub-Servicers.*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "Whole Loan Sale Agreement" and therefore is not able to respond. Aurora requests that you please provide further clarification in order that we may determine whether additional response is warranted. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan and therefore exceeds the discovery permitted by the Section 6 of RESPA. Moreover, subject to and without waiving any objection, Aurora states that the information requested is proprietary, confidential, and/or otherwise protected from disclosure and dissemination and the borrower has no privity of contract with respect to the requested agreement. Aurora requests that you provide a confidentiality agreement.

*Request: Please state the full name and address of any attorney you have gained to provide any legal services in this case within six (6) months of the petition date or at any time post-petition.*

**Objection:** Aurora states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan and therefore exceeds the discovery permitted by the Section 6 of RESPA. Moreover, subject to and without waiving any objection, Aurora states that the information requested is proprietary, confidential, and/or otherwise protected from disclosure and dissemination and the borrower has no privity of contract with respect to the requested agreement. Subject to and without waiving any objections, and to the extent a response may be necessary, Aurora refers to the information and documents publicly available through the

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 12 of 13

"EDGAR" system on the United States Securities and Exchange Commission's website, http://www.sec.gov/edgar.shtml.

The enclosed documents should answer any questions you may have about your loan. For simple factual inquiries regarding the servicing of the loan(s) at issue, please contact Aurora's Customer Service Help Desk at:

> Aurora Customer Service
> 2617 College Park
> Post Office Box 1706
> Scottsbluff, Nebraska 69363-1706
> Telephone: (800) 550-0508

Origination and the underwriting and closing of the loan transaction should be directed to:

> Executive Communications
> 10350 Park Meadows Drive
> Littleton, Colorado 80124
> Telephone (866) 420-3167

Otherwise, please contact the undersigned at the address and/or telephone number given above.

If you are interested in requesting a loan modification, please fill out the enclosed Borrower's Financial Statement, and return it to the undersigned. Also, please provide: (1) copies of the borrower's paystubs for the last two months; (2) if the borrower is self-employed, complete copies of the borrower's tax returns for the last two years; (3) copies of the borrower's complete bank statements for the last two months; and (4) a hardship letter, explaining why the borrower fell behind on the borrower's mortgage payments and how the borrower believes s/he will now be able to make those payments.

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 13 of 13

Thank you for your anticipated cooperation.

Sincerely,

Gabriel Assaad

Enc

78975 T67

American Abstract & Search Inc.
2773-2775 Philmont Avenue
Huntingdon Valley, PA  19006

True and Correct Copy of the Original

After Recording Return To:
EQUITY FINANCIAL INC.
204 ROUTE 18
EAST BRUNSWICK NJ 08816

LOAN NO.:                        ———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in
Section 16
(A)  "Security Instrument" means this document, which is dated          JUNE 9, 2004
together with all Riders to this document
(B)  "Borrower" is
JERRY M TAYLOR AND VANESSA H  TAYLOR

Borrower is the mortgagor under this Security Instrument.
(C)  "Lender" is  EQUITY FINANCIAL , INC

Lender is a
organized and existing under the laws of                    THE STATE OF NEW JERSEY
Lender's address is   204 ROUTE 18
EAST BRUNSWICK, NJ  08816
Lender is the mortgagee under this Security Instrument.
(D)  "Note" means the promissory note signed by Borrower and dated          JUNE 9, 2004
The Note states that Borrower owes Lender
THREE HUNDRED SIX THOUSAND EIGHT HUNDRED FIFTY AND 00/100
Dollars (U.S. $      306,850.00      ) plus interest.  Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than          JULY 1, 2034
(E)  "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3031 1/01  (A)              Page 1 of 13        Initials: _____

00025

001

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ 1-4 Family Rider
☐ Biweekly Payment Rider    ☐ V.A. Rider
☒ Other(s) [specify]    SEE LEGAL DESCRIPTION ATTACHED

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

NEW JERSEY – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Laser Forms Inc. (800) 446-3555
LF #FNMA3031 1/01      Page 2 of 13    Initials: _SMT_
_VHT_

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the

COUNTY of MONMOUTH
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED

which currently has the address of     148 HAMILTON ROAD
                                        [Street]
TINTON FALLS        , New Jersey    07724     ("Property Address"):
[City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3031 1/01          Page 3 of 13      Initials: SMT VHT

00027

003

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows:

1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future.  If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  Application of Payments or Proceeds.  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  Funds for Escrow Items.  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  Borrower's obligation to make such payments and to

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3031 1/01

Page 4 of 13          Initials: _SmT_
                               _VH T_



provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3031 1/01

Page 5 of 13        Initials: SMT
                              YHT

subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6.  Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition  Unless it is determined pursuant to

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3031 1/01                          Page 6 of 13        Initials: *SMT*
                                                                        *VHT*

00030

Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Law Forms Inc. (800) 446-3555
LFI #FNMA3031 1/01                          Page 7 of 13        Initials _JMT_
                                                                      _VHT_

 

pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3031 1/01

Page 8 of 13        Initials: _SMT_
_VHT_



Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  Loan Charges.  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Law Forms Inc (800) 446-3555
LFI 6FNMA3031 1/01

Page 9 of 13          Initials: _JHT_
                                _YHT_

the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.  Notices.  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.  Governing Law; Severability; Rules of Construction.  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument:  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  Borrower's Copy.  Borrower shall be given one copy of the Note and of this Security Instrument.

18.  Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms,

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Law Forms Inc. (800) 446-3555
LFI #FNMA3031 1/01                    Page 10 of 13        Initials: *JMT*  *VHT*



as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3031 1/01                    Page 11 of 13        Initials: _SMT_
                                                                    _VHT_

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at § 82A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23.  Release.  Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law

24.  No Claim of Credit for Taxes.  Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges  Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3031 1/01                                    Page 12 of 13       Initials: _____

00036

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____    _____    (Seal)
                             JERRY M. TAYLOR                -Borrower

_____    _____    (Seal)
                             VANESSA H. TAYLOR              -Borrower

                             _____    (Seal)
                                                            -Borrower

                             _____    (Seal)
                                                            -Borrower

[Space Below This Line For Acknowledgment]

STATE OF NEW JERSEY, Pennsylvania, Montgomery                    County ss:
    On this 9Th day of June, 2004       before me, the subscriber, personally appeared
JERRY M. TAYLOR AND VANESSA H. TAYLOR

who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.

                             _____
                                                  -Notary Public

This Instrument was prepared by: AGAPI COVELL

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.
Witnesses:

_____    _____
                             JERRY M. TAYLOR

_____    _____
                             VANESSA H. TAYLOR

_____

_____

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3031 1/01
Laser Forms Inc. (800) 446-3565
LFI #FNMA3031 1/01                    Page 13 of 13

Notarial Seal
Dale G. Niklas, Jr., Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires Dec. 30, 2006

09037

013

**Aurora • Loan Services**
P.O. Box 1706
Scottsbluff NE 69363-1706
www.myAuroraLoan.com

46187 000005 BK728
Jerry M Taylor
148 Hamilton Rd
Tinton Falls NJ 07724-9717

November 30, 2009

RE: Loan No:
      Property Address: 148 Hamilton Rd, Tinton Falls NJ 07724

                     IMPORTANT MESSAGE

Dear Customer(s):

We were recently advised that your bankruptcy case was dismissed or you
received a discharge. If you are still in an active bankruptcy proceeding
please disregard this letter.

We want you to know that we may be able to assist you in keeping your
property. Please call us as quickly as possible and a Home Retention
Counselor will be available to discuss your current financial situation
and potential solutions.

Should you decide to contact us, some of our workout options will require
the following information to be submitted. It is important for you
to understand that contacting us is the first step. Receipt of this
information will allow us to assess the financial hardship and determine
if there is an available, suitable workout option for you.
  - Complete and return the financial form that is attached to this
    letter.
  - Attach a copy of evidence of the source and amount of income that
    you disclosed on the financial form (Evidence could include copies
    of your 2 most recent pay stubs, lease agreements (if you are a
    landlord), copies of bank or brokerage statements (if you have
    investment income), etc.).

Please return the requested information to:
              Aurora Loan Services, Attention: Loss Mitigation
              PO Box 1706
              Scottsbluff NE 69363-1706
              Fax Number: 303-728-7634

Please call us toll free at 800-550-0509, 8:00 a.m. to 11:00 p.m., ET,
Monday through Thursday; 8:00 a.m. to 9:00 p.m. ET, Friday; or 8:00 a.m.
to 4:00 p.m. ET on Saturday.

Sincerely,
Loss Mitigation
Aurora Loan Services


Aurora Loan Services is a debt collector. Aurora Loan Services is
attempting to collect a debt and any information obtained will be
used for that purpose. However, if you are in bankruptcy or received
a bankruptcy discharge of this debt, this communication is not an
attempt to collect the debt against you personally, but is notice
of a possible enforcement of the lien against the collateral property.

00038

# AURORA LOAN SERVICES INC

601 Fifth Avenue • P O Box 1706 • Scottsbluff, NE 69363-1706 • Fax: 308-630-6700

January 06, 2005


        CL04201-06-05

Jerry Taylor
148 Hamilton Rd
Tinton Falls NJ 07724

RE:   Loan No.
      Property Address: 148 Hamilton Rd, Tinton Falls NJ 07724
      NOTICE OF INTENTION TO FORECLOSE

Dear Borrower(s):

The Mortgage held or serviced by Aurora Loan Services (hereinafter
we, us or ours) on your property located at 148 Hamilton Rd,
Tinton Falls NJ 07724 in the original amount of $ 306850.00
IS IN SERIOUS DEFAULT because you have not made monthly payments from
12-01-04 through today, 01-06-05.  The total amount required to bring
your mortgage current, is calculated below.

AMOUNT DUE ITEMIZED BELOW . . .  12-01-04 THROUGH 01-06-05
Payments 12/04 - 01/05 X $2,474.09 each    Total Payments  $4,948.18
Payments     each     Total Payments
Payments     each     Total Payments
Unpaid Late Charge Balance                            353.58
NSF Fees                                                 .00
Inspection Fees                                          .00
                    (Less Suspense)                      .00
                 Total Amount Due               $5,301.76
You may cure this default within THIRTY (30) DAYS of the date of this
letter, by paying the amount listed above, plus any additional monthly
payments and late charges which may fall due during this period.  Such
payment must be made either by cashiers check, certified check or
money order, and sent to: Aurora Loan Services Inc, Attn: Cashiering Dept,
PO Box 5180, Denver,CO 80217-5180.  Our toll free number is 800-550-0509.


If you do not cure the default within THIRTY (30) DAYS, we intend to
exercise our right to accelerate the mortgage payments.  This means that
the remaining balance of the original amount borrowed will be considered
due immediately and you may lose the chance to pay the original mortgage
in monthly installments.  We may take steps to terminate ownership and
trust in the property by commencing a foreclosure action in a court of
competent jurisdiction.

                Page 1 of 2    IMPORTANT INFORMATION ON PAGE 2


EQUAL HOUSING
LENDER

00039

# AURORA LOAN SERVICES INC

Loan Number: PO Box 1706 • Scottsbluff, NE 69363-1706 • Fax: 308-630-6700          Page 2 of 2

You have the right to cure the default by February 05, 2005, and
bring your mortgage payments current. After the date of expiration you
will be responsible for all court costs and attorney fees, calculated
consistent with the Rules of the Superior Court of New Jersey, incurred
in the foreclosure proceeding. You may have the right to transfer your
interest in the mortgaged property to a third party, and the third
party may cure the default as provided in this letter, if provided for
in the mortgage documents.

You have the right to an attorney. You are advised to seek counsel from
an attorney of your own choosing. If you are unable to obtain an attorney
or otherwise afford an attorney, you may contact the New Jersey Bar
Association or Lawyer Referral Service in the county in which the
property is located; or otherwise may contact the Legal Services Office
in the county in which the property is located. Attached to this
correspondence is a list of the Legal Services and Legal Aid Offices by
county in the State of New Jersey, and a list of the Lawyer Referral
Services available in New Jersey.

There may also be financial assistance, for curing your default,
available from organizations operated by the state or federal government,
or non-profit organizations. Attached is a list of New Jersey
Governmental and Non-Profit Organizations approved by the Commissioner
of Banking, or you may call the Commission of Banking at (609) 292-7272
for more information regarding these organizations.

If you do not agree that a default of your mortgage has occurred or you
dispute the amount provided for curing that default, please contact:
Aurora Loan Services, Collection Supervisor
        1-800-609-2696
        PO Box 2046 or 601 5th Avenue
        Scottsbluff, NE 69361

If you cure your default, the mortgage will be restored as if no
default had occurred.

This is an attempt to collect a debt and any information obtained will
be used for that purpose. However, if you have previously received
a discharge in bankruptcy, and you were a borrower on a loan with
Aurora Loan Services, or its predecessor(s), at the time of filing your
bankruptcy, this correspondence is not and should not be construed to
be an attempt to collect a debt or impose personal liability against you,
but solely an enforcement of a lien against the property.

Loan Counseling
Aurora Loan Services


Enclosures:  Legal Services and Legal Aid Offices Listing
             Lawyer Referral Services Listing
             New Jersey Governmental and Non-Profit Organizations Listing

Regular and Certified Mail/Return Receipt Required

00040

# PUBLIC NOTICE

BANKING
DEPARTMENT OF BANKING AND INSURANCE
DIVISION OF BANKING
THE COMMISSIONER

**Notice Under the Fair Foreclosure Act**

**List of Governmental and Non-Profit Entities That May Provide Financial Assistance or Counseling to Borrowers in Foreclosure**

    <u>Take notice</u> that the Fair Foreclosure Act, N.J.S.A. 2A:50-53 et seq., requires a creditor to give the debtor notice of intention to take action 30 days before commencing a foreclosure. The notice must clearly and conspicuously state the possible availability of financial assistance for curing a default through programs operated by the State or Federal government or non-profit organizations, if any, as identified by the Commissioner of Banking and Insurance. The Act further provides that this requirement may be satisfied by attaching a list of such programs promulgated by the Commissioner.

    Following is a list of these programs. The Department intends to publish this list annually. If you have information regarding any necessary additions or changes to this list, please contact the following office:

        Office of Consumer Finance
        Department of Banking and Insurance
        Division of Banking
        P.O. Box 040
        Trenton, NJ 08625

    The following is a list of governmental and non-profit entities that may provide financial assistance or counseling to borrowers in foreclosure. It is recommended that you consult with your attorney.

        American Credit Alliance, Inc.
        26 South Warren Street
        Trenton, NJ 08608
        (609) 393-5400

        Atlantic Human Resources, Inc.
        1 South New York Avenue
        Atlantic City, NJ 08401
        (609) 348-4131

        Citizen Action (Offices statewide)
        400 Main Street
        Hackensack, NJ 07601
        1-800-NJ OWNER
        (201) 488-2804

00041

Ocean Community Economic Action Now, Inc.
10 Washington Street
Toms River, NJ 08753-0773
(732) 244-2351, ext. 14

Paterson Coalition for Housing, Inc.
262 Main Street, 5th Floor
Paterson, NJ 07505
(973) 684-5998

Paterson Task Force for Community Action, Inc.
155 Ellison Street
Paterson, NJ 07505
(973) 279-2333

Tri-County Community Action Agency, Inc.
110 Cohansey Street
Bridgeton, NJ 08302
(856) 451-6330

Urban League for Bergen County
106 West Palisade Avenue
Englewood, NJ 07631
(201) 568-4988

Urban League for Essex County
508 Central Avenue
Newark, NJ 07101
(973) 624-9535

Urban League of Union County
288 North Broad Street
Elizabeth, NJ 07208
(908) 351-7200

Homelessness Prevention Program
New Jersey Department of Community Affairs
(609) 633-6204*

    *Basic eligibility is limited to: (a) single family owner/occupied dwellings with all those
on the deed and mortgage occupying the house; (b) no more than one mortgage or lien
encumbrance on the property; (c) no initiated or ongoing bankruptcy. Assistance will be in the
form of a loan, and a lien will be placed on the property. The family must document the
financial reason for nonpayment. At the time of the eligibility decision, the household must have
and document sufficient income to support the household and repay the loan. There is a fee for
the credit check and property search.

00049

**Aurora • Loan Services**

P.O. Box 1706
Scottsbluff, NE 69363-1706
www.myAuroraLoan.com

**ESCROW ACCOUNT STATEMENT**

Analysis Date:                 07/17/09

Account Number:

Customer Service: 1-800-550-0508
TDD: 1-877-266-7210
Mon-Thu, 8:00 a.m. to 11:00 p.m., ET
Fri, 8:00 a.m. to 9:00 p.m., ET
Sat 8:00 a.m. to 4:00 p.m ET

17306-000096-001

JERRY M TAYLOR
148 HAMILTON RD
TINTON FALLS NJ  07724-9717

Current Payment as of 07/17/09
Principal and Interest                 $2 357 24
Escrow/Impound                            55.51
**Total Current Payment**            **$2,412.75**

New Payment Effective 10/01/09
Principal and Interest                 $2,569 04
Escrow/Impound                          594 06
Escrow Shortage                       2,850.29
**Total New Payment**                **$6,013.39**

Aurora Loan Services is a debt collector. Aurora Loan Services is attempting to collect a debt and any information obtained will be used for that purpose. However if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property

Your Escrow Account has a shortage in the amount of $34,203.47. Repayment of the escrow shortage has been spread over 12 months
However you may choose to pay the shortage amount in full Please refer to the Escrow Shortage Coupon below

## PAYMENT CALCULATIONS AND ESCROW ACTIVITY FOR THE NEXT 12 MONTH ESCROW CYCLE

For quality assurance and to comply with federal regulations, Real Estate Settlement Procedures Act (RESPA), your escrow account is reviewed at least once a year to determine that sufficient funds are available to pay your taxes and/or insurance  If the taxes and /or insurance amounts we pay from your escrow account change during the year, then the amount we are required to collect may also change  If this occurs  we suggest you contact your tax authority or insurance agent directly for an explanation of the change in your bill.

### ESCROW DISBURSEMENTS

**Current Anticipated Disbursements**
This year, we anticipate that payments from your
account will equal  $7 128 80

| | |
|---|---|
| City Quart 4 | 1,567 66 |
| Insurance | 884 09 |
| City Quart 1 | 1,554 69 |
| City Quart 2 | 1,554 69 |
| City Quart 3 | 1,567.67 |
| Total Disbursements | 7,128.80 |

Escrow Payment Calculation
$7,128 80 / 12 months = $594 06

**Previous Anticipated Disbursements**
Last year, we anticipated that payments from your
account would be made during this period equaling
$7 025 47

| | |
|---|---|
| City Quart 4 | 1 567 67 |
| Insurance | 891 22 |
| City Quart 1 | 1 541 72 |
| City Quart 2 | 1 457 19 |
| City Quart 3 | 1,567.67 |
| Total Disbursements | 7,025.47 |

Escrow Payment Calculation
$7 025 47 / 12 months = $585 46

### Calculation of Escrow Adjustment
Beginning Projected Balance $31,157 66
Beginning Required Balance    3,045.81
Escrow Shortage             $34,203.47
Monthly Escrow Adjustment     2 850 29
(Escrow Shortage divided by 12)

### PROJECTED ESCROW ACTIVITY FOR THE NEXT 12 MONTH ESCROW CYCLE

Your actual starting escrow balance is $31,157 66-. According to your projected escrow activity  you are required
to have a starting escrow balance of $3 045.81  Therefore  you have a shortage of $34 203 47.

| Month | Anticipated Payments To Escrow | Anticipated Payments From Escrow | Description | Required Balance | Actual Balance |
|---|---|---|---|---|---|
| | | | STARTING BALANCE | 3,045.81 | 31,157.66- |
| Oct | 594 06 | 1 567 66 | CITY QUART 4 | 2,072 21 | 32,131 26- |
| Oct | | 884 09 | INSURANCE | 1,188.12 | 33,015 35-LP |
| Nov | 594 06 | | | 1,782.18 | 32 421 29- |
| Dec | 594 06 | | | 2,376.24 | 31,827 23- |
| Jan | 594 06 | 1,554 69 | CITY QUART 1 | 1,415.61 | 32,787 86- |
| Feb | 594 06 | | | 2 009.67 | 32,193 80- |
| Mar | 594 06 | | | 2 603 73 | 31 599 74- |
| Apr | 594 06 | 1,554.69 | CITY QUART 2 | 1 643.10 | 32,560 37- |
| May | 594 06 | | | 2 237 16 | 31,966 31- |
| Jun | 594 06 | | | 2 831 22 | 31,372.25- |
| Jul | 594 06 | 1,567 67 | CITY QUART 3 | 1 857 61 | 32,345 86- |
| Aug | 594 06 | | | 2 451 67 | 31,751 80- |
| Sep | 594 06 | | | 3 045 73 | 31 157 74- |
| | | | ENDING BALANCE | 3 045.73 | 31,157 74- |
| TOTAL | 7 128 72 | 7 128.80 | | | |

Based upon your mortgage documents and/or state and federal laws, we are allowed to maintain a cushion
in your escrow account (excluding MIP/PMI)  Your lowest monthly balance (LP) for the next 12 months
should not exceed $1 188.12, which equals 1/6 of the anticipated payments from your escrow account
*** CONTINUED ON REVERSE ***

---

**Aurora • Loan Services**

P.O. Box 1706
Scottsbluff  NE 69363-1706

## ESCROW SHORTAGE COUPON

Loan Number                        Customer Name:  JERRY M TAYLOR

Your escrow analysis indicated a shortage of $34,203 47 For your convenience we spread this amount
over 12  months and included it in your new monthly payment. However, if you choose to pay it in full
please detach this coupon and send it with your check to:

**AURORA LOAN SERVICES
P O BOX 5180
DENVER, CO  80217-5180**

Upon receipt of your check  your monthly payment will be reduced to .$3 163 10

00046

003420347  003420347  003420347

# Aurora ∙ Loan Services

P.O. Box 1706
Scottsbluff, NE 69363-1706
www.myAuroraLoan.com

### ESCROW ACCOUNT STATEMENT

| | |
|---|---|
| Analysis Date: | 09/08/09 |
| Account Number: | |

Customer Service:  1-800-550-0508
TDD:  1-877-266-7210
Mon-Thu, 8:00 a.m. to 11:00 p.m., ET
Fri, 8:00 a.m. to 9:00 p.m  ET
Sat, 8:00 a.m. to 4:00 p.m  ET

12363-000072-001
JERRY M TAYLOR
148 HAMILTON RD
TINTON FALLS NJ  07724-9717

| Current Payment as of 09/08/09 | |
|---|---|
| Principal and Interest | $2 357 24 |
| Escrow/Impound | 55.51 |
| **Total Current Payment** | **$2,412 75** |

| New Payment Effective 11/01/09 | |
|---|---|
| Principal and Interest | $2 569 04 |
| Escrow/Impound | 582 67 |
| Escrow Shortage | 2,881.88 |
| **Total New Payment** | **$6,033 59** |

Aurora Loan Services is a debt collector. Aurora Loan Services is attempting to collect a debt and any information obtained will be used for that purpose.  However if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property

Your Escrow Account has a shortage in the amount of $34,582.50.  Repayment of the escrow shortage has been spread over 12 months.
However  you may choose to pay the shortage amount in full.  Please refer to the Escrow Shortage Coupon below.

## PAYMENT CALCULATIONS AND ESCROW ACTIVITY FOR THE NEXT 12 MONTH ESCROW CYCLE

For quality assurance and to comply with federal regulations, Real Estate Settlement Procedures Act (RESPA), your escrow account is reviewed at least once a year to determine that sufficient funds are available to pay your taxes and/or insurance.  If the taxes and /or insurance amounts we pay from your escrow account change during the year, then the amount we are required to collect may also change.  If this occurs  we suggest you contact your tax authority or insurance agent directly for an explanation of the change in your bill.

### ESCROW DISBURSEMENTS

**Current Anticipated Disbursements**
This year, we anticipate that payments from your account will equal  $6 992 05

| | |
|---|---|
| City Quart 1 | 1,554 69 |
| City Quart 2 | 1,554 .69 |
| City Quart 3 | 1,499 29 |
| City Quart 4 | 1 499 29 |
| Insurance | 884 .09 |
| Total Disbursements | 6,992.05 |

Escrow Payment Calculation
$6 992 05 / 12 months = $582 67

**Previous Anticipated Disbursements**
Last year, we anticipated that payments from your account would be made during this period equaling
$7 128 80

| | |
|---|---|
| City Quart 1 | 1 554 69 |
| City Quart 2 | 1 554 69 |
| City Quart 3 | 1 567 67 |
| City Quart 4 | 1 567 66 |
| Insurance | 884.09 |
| Total Disbursements | 7,128 80 |

Escrow Payment Calculation
$7 128 80 / 12 months = $594 06

**Calculation of Escrow Adjustment**
Beginning Projected Balance $33 417 15
Beginning Required Balance  1,165.35
Escrow Shortage            $34,582.50
Monthly Escrow Adjustment   2,881.88
(Escrow Shortage divided by 12)

### PROJECTED ESCROW ACTIVITY FOR THE NEXT 12 MONTH ESCROW CYCLE

Your actual starting escrow balance is $33,417 15 .  According to your projected escrow activity  you are required to have a starting escrow balance of $1 165 35  Therefore  you have a shortage of $34 582 50

| Month | Anticipated Payments To Escrow | Anticipated Payments From Escrow | Description | Required Balance | Actual Balance |
|---|---|---|---|---|---|
| | | | STARTING BALANCE | 1,165.35 | 33 417.15- |
| Nov | 582 67 | | | 1 748 02 | 32 834 48- |
| Dec | 582 67 | | | 2,330 69 | 32 251 81- |
| Jan | 582 67 | 1,554 69 | CITY QUART 1 | 1,358 67 | 33 223 83- |
| Feb | 582 67 | | | 1,941 34 | 32 641 16- |
| Mar | 582 67 | | | 2 524 01 | 32,058 49- |
| Apr | 582 67 | 1 654 69 | CITY QUART 2 | 1 551 99 | 33 030 51- |
| May | 582 67 | | | 2 134 66 | 32 447 84- |
| Jun | 582 67 | | | 2 717 33 | 31 865 17- |
| Jul | 582 67 | 1,499 29 | CITY QUART 3 | 1,800 71 | 32 781 79- |
| Aug | 582 67 | | | 2 383 38 | 32 199 12- |
| Sep | 582 67 | | | 2 966 05 | 31 616 45- |
| Oct | 582 67 | 1 499 29 | CITY QUART 4 | 2 049 42 | 32,533 07- |
| Oct | | 884 09 | INSURANCE | 1 165 34 | 33,417 16-LP |
| | | | ENDING BALANCE | 1 165 34 | 33 417 16- |
| TOTAL | 6,992 04 | 6,992.05 | | | |

Based upon your mortgage documents and/or state and federal laws, we are allowed to maintain a cushion in your escrow account (excluding MIP/PMI)  Your lowest monthly balance (LP) for the next 12 months should not exceed $1 165.34  which equals 1/6 of the anticipated payments from your escrow account
*** CONTINUED ON REVERSE ***

---

# Aurora ∙ Loan Services

P.O. Box 1706
Scottsbluff  NE 69363-1706

## ESCROW SHORTAGE COUPON

Loan Number                                Customer Name: JERRY M TAYLOR

Your escrow analysis indicated a shortage of $34,582 50 For your convenience we spread this amount
over 12  months and included it in your new monthly payment  However if you choose to pay it in full
please detach this coupon and send it with your check to:

**AURORA LOAN SERVICES
P O BOX 5180
DENVER, CO  80217-5180**

Upon receipt of your check, your monthly payment will be reduced to $3 151 71

003458250  003458250  003458250

00044

**Aurora • Loan Services**
10350 Park Meadows Drive
Littleton, CO 80124
www.myAuroraLoan.com

46007-0010878-003-1-000-010-000-000

354 0018088203534BIL111709
JERRY M TAYLOR
148 HAMILTON RD
TINTON FALLS NJ 07724-9717

## ACCOUNT STATEMENT

Statement Date:                    11/17/09

Account Number:

Property Address: 148 HAMILTON RD
                          TINTON FALLS NJ 07724

| | |
|---|---|
| Customer Service: | 1-800-550-0508 |
| TDD: | 1-877-266-7210 |
| Loan Counseling: | 1-800-550-0509 |
| TDD: | 1-877-266-7211 |
| Insurance Center: | 1-800-732-6578 |

**\* See reverse side for hours of operation
and other important contact information**

## ACCOUNT INFORMATION

Balances as of 11/17/09
| | |
|---|---|
| Principal Balance* | $305,322.37 |
| Escrow Balance | ($35 899.11) |
| Suspense Balance | $0.00 |
| Interest Rate | 8.490% |

Year-to-Date
| | |
|---|---|
| Principal Paid | $0.00 |
| Interest Paid | $0.00 |
| Taxes Paid | $6 107.96 |

* The principal balance is not the total amount required to pay your loan in full.

## PAYMENT SUMMARY

| | |
|---|---|
| Principal and/or Interest | $2 569.04 |
| Escrow | $3 464.55 |
| Optional Products | $0.00 |
| Misc Fees | $0.00 |
| HUD/Buydown Subsidy | $0.00 |
| **Total Monthly Payment** | **$6,033.59** |

## AMOUNT DUE

| | |
|---|---|
| Payment Due Date | 04/01/05 |
| Payment Amount Due | $6 033.59 |
| Past Due Amounts | $165,951 56 |
| Unpaid Late Charges | $117 12 |
| Unpaid Return Check Fees | $10 00 |
| Cumulative Other Fees | $10 00 |
| Cumulative Advances | $6,961.98 |
| **TOTAL AMOUNT DUE** | **$179 084 25** |
| If Paid After 12/16/09 | |
| Late Charge Amount | $128 45 |
| Total Amount Due | $179,212.70 |

## TRANSACTION ACTIVITY SINCE LAST STATEMENT

| Transaction Description | Date Due | Transaction Date | Total Received | Principal | Interest | Escrow | Optional Products | Suspense / Advances / Fees |
|---|---|---|---|---|---|---|---|---|
| Property Preservation Fees | | 09/23/09 | | | | | | -12 00 |
| Property Preservation Fees | | 10/23/09 | | | | | | -12 00 |
| City Tax | | 11/03/09 | 1 499 29 | | | -1 499 29 | | |
| Escrow Advance | | 11/03/09 | | | | 1,499 29 | | |
| Hazard Ins Disb | | 11/09/09 | 313 00 | | | -313 00 | | |
| Escrow Advance | | 11/09/09 | | | | 313 00 | | |
| Foreclosure Attorney Fees | | 11/17/09 | | | | | | -150 00 |
| Foreclosure Fees | | 11/17/09 | | | | | | -24 28 |
| Foreclosure Attorney Fees | | 11/17/09 | | | | | | -30 00 |
| Foreclosure Fees | | 11/17/09 | | | | | | -55 00 |
| Foreclosure Fees | | 11/17/09 | | | | | | -55 00 |
| Foreclosure Sheriff Deposit | | 11/17/09 | | | | | | -1,200.00 |

## IMPORTANT  MESSAGES

If you are in bankruptcy or received a bankruptcy discharge of this debt  please refer to the disclosure on the reverse side
"Important Information regarding the Fair Debt Collection Practices Act and Bankruptcy Law"

The "Cumulative Other Fees" and "Cumulative Advances" provided in the "Amount Due" portion of this statement each is
the sum of all such fees and costs that are itemized for the current month under the "Transaction Activity Since Last
Statement" portion of this statement plus all related unpaid fees and costs that were itemized on previous monthly
statements

'Cumulative Advances' include, but are not limited to, property inspection fees, property preservation fees, legal fees,
foreclosure fees and costs, appraisal fees, the cost of broker price opinions (sometimes referred to as BPOs), title report
fees, recording fees  and subordination fees

"Other Fees" include, but are not limited to, short payment advances (that is, funds advanced by the servicer to an
insufficient monthly payment  to post the payment as current) and Speed ACH fees

Your Escrow balance has reached a negative amount  This could result in a possible escrow shortage when your escrow
account is analyzed  Call Customer Service with any questions you have regarding your Escrow account

---

DETACH HERE  Retain this portion of your statement for your records.  Please allow 7 to 10 days for postal delivery

emit U.S. funds payable to Aurora Loan
ervices.  Include your loan number on
ur check.  Aurora Loan Services does
t solicit post dated checks.  All checks
e subject to immediate deposit.

tstanding any instructions to the contrary, funds will be applied in the following order as detailed in your loan documents:
terest due; (2) principal due; (3) escrow due; (4) fees due; (5) to reduce your principal balance once your loan is contractually current

ERRY M TAYLOR

| ACCOUNT NUMBER | PAYMENT DUE DATE | PAYMENT AMOUNT DUE | PAST DUE AMOUNT | TOTAL FEES DUE | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|
| | 04/01/05 | 6,033.59 | 165,951.56 | 7,099.10 | 179,084.25 |

☐ Please check here if address, phone# or e-mail
change is indicated on reverse side

If payment is made after
12/16/09, remit this amount

**LATE PAYMENT**
179,212.70

6/13

| | |
|---|---|
| Payment Amount | |
| Additional Principal | |
| Additional Escrow | |
| Late Charges/Fees | |
| **Amount Enclosed** | $ |

**Aurora • Loan Services**
ATTN: CASHIERING
PO BOX 173930
DENVER CO  80217-3930

000616204  000603359  017908425

00045

# AURORA LOAN SERVICES

10350 Park Meadows Drive
Littleton CO 80124

www.alservices.com

3640018088203534BIL101707
38838-016444-004
JERRY M TAYLOR
148 HAMILTON RD
TINTON FALLS NJ 07724

## ACCOUNT STATEMENT

Statement Date: 10/17/07

Account Number:

Property Address: 148 HAMILTON RD
TINTON FALLS NJ 07724

Customer Service: 1-800-550-0508
TDD: 1-877-266-7210
Mon-Fri, 6:00 a.m. to 7:00 p.m. MT
Sat 8:00 a.m. to 12:00 p.m. MT

Loan Counseling:
TDD: 1-800-550-0509
1-877-266-7211
Mon-Thu, 7:00 a.m. to 9:00 p.m. MT
Friday 7:00 a.m. to 7:00 p.m. MT
Sat, 7:00 a.m. to 11:00 a.m. MT

## ACCOUNT INFORMATION

Balances as of 10/17/07
Principal Balance*          $305,322.37
Escrow Balance              $22,109.22-
Suspense Balance            $0.00
Interest Rate               8.490%

Year-to-Date
Principal Paid              $0.00
Interest Paid               $0.00
Taxes Paid                  $4,582.16

The principal balance is not the total amount required to pay your loan in full.

## PAYMENT SUMMARY

| | |
|---|---|
| Principal and/or Interest | $3,329.95 |
| Escrow | $2,267.11 |
| Optional Products | $0.00 |
| Misc Fees | $0.00 |
| HUD/Buydown Subsidy | $0.00 |
| Total Monthly Payment | $5,597.06 |

## AMOUNT DUE

| | |
|---|---|
| Payment Due Date | 04/01/05 |
| Payment Amount Due | $5,597.06 |
| Past Due Amounts | $93,165.15 |
| Unpaid Late Charges | $117.12 |
| Unpaid Return Check Fees | $10.00 |
| Unpaid Other Fees | $10.00 |
| Unpaid Advances | $4,175.22 |
| TOTAL AMOUNT DUE | $103,074.55 |
| Late Charge Amount | $166.50 |
| Total Amount Due If Paid After 11/16/07 | $103,241.05 |

## TRANSACTION ACTIVITY SINCE LAST STATEMENT

| Transaction Description | Date Due | Transaction Date | Total Received | Principal | Interest | Escrow | Optional Products | Suspense / Advances / Fees |
|---|---|---|---|---|---|---|---|---|
| Hazard Ins Disb | | 09/26/07 | | | | 891.22- | | |

## IMPORTANT MESSAGES

Aurora Loan Services ("Aurora") has been notified that your account is subject to an active Chapter 13 bankruptcy proceeding. Aurora is sending this communication for informational purposes only and Aurora recognizes that it is prohibited from taking any action to collect this debt or enforce its lien without obtaining permission from the bankruptcy court. Further, Aurora recognizes that while your bankruptcy is pending, the terms of your payments to Aurora if any, are governed by your Chapter 13 Plan and applicable bankruptcy law. If at any time you desire that Aurora stop sending monthly statements. please contact Aurora at 1-800-550-0508 and Aurora will comply with your request.

If you have any Real Estate Property Tax questions, please call our Tax Department at 1-866-923-6059. They are open Monday-Friday, 6 AM to 7 PM, Mountain Time and will be happy to help you. Thank you.

Advances are items such as property inspection fees, property preservation fees, legal fees, appraisal fees BPO fees, title report fees, recording fees, and subordination fees

We may report information about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

New ways to manage your loan are on the horizon.   Coming in November 2007, our newly designed Web site will offer easier navigation, online payment options including stored bank data and Autopay, and single login access to payment history and loan information  Visit us online at www.MyAuroraLoan.com.

You can now view your Billing and Yearend Statements online at
https://www.alservices.com/consumer/ccn.aspx

Thank you for doing business with Aurora Loan Services
Online loan information: www.alservices.com

DETACH HERE  Retain this portion of your statement for your records. Please allow 7 to 10 days for postal delivery

| ACCOUNT NUMBER | PAYMENT DUE DATE | PAYMENT AMOUNT DUE | PAST DUE AMOUNT | TOTAL FEES DUE | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|
| | 04/01/05 | 5,597.06 | 93,165.15 | 4,312.34 | 103,074.55 |

Remit U.S. funds payable to Aurora Loan Services
Include your loan number on your check.

☐ Please check here if address, phone # or e-mail change is indicated on reverse side

If payment is made after 11/16/07 remit this amount →

**LATE PAYMENT**
103,241.05

RY M TAYLOR

6/13

AURORA LOAN SERVICES
ATTN: CASHIERING
PO BOX 173930
DENVER CO 80217-3930

Payment Amount

Additional Principal

Additional Escrow

Late Charges/Fees

Amount Enclosed  $

000576356 000559706 010307455

0304