## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 09-38410 (KCF) |
| JERRY M. and VANESSA TAYLOR, | CHAPTER 13 |
| Debtors. | |
| JERRY M. and VANESSA TAYLOR, | |
| Plaintiffs, | |
| Vs. | ADV. PROC. NO. 10-1083 |
| AURORA LOAN SERVICES, | |
| Defendant. | |

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Andrew P. Zacharda, Esq.
   Of Counsel and On the Brief

**TOMPKINS, McGUIRE, WACHENFELD & BARRY LLP**
Andrew P. Zacharda, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4070
(973) 622-3000
*Attorneys for Aurora Loan Services LLC*

**STATEMENT OF FACTS**

On or about June 9, 2004, Jerry M. and Vanessa H. Taylor (collectively, "Plaintiffs") borrowed $306,850 from Equity Financial, Inc. To secure repayment of the debt, Plaintiffs executed a mortgage in favor of Equity Financial, Inc. (the "Mortgage"), encumbering their real property located at 148 Hamilton Road, Tinton Falls, New Jersey (the "Property"). The Mortgage was recorded in the Monmouth County Clerk's office on July 10, 2004 in Book 8379, Page 9452. The Mortgage was assigned to Lehman Brothers Bank, FSB by written assignment dated June 9, 2004, and was further assigned to Mortgage Electronic Registration Systems, Inc. by written assignment dated August 2, 2005.

Plaintiffs defaulted on the payments on the Mortgage. As a result, a foreclosure action was commenced on April 21, 2005, bearing docket no. F-6611-05 (the "Foreclosure Action"). On October 12, 2005, final judgment of foreclosure was entered in the Foreclosure Action. The Foreclosure Action was then placed on hold in order to allow Plaintiffs an opportunity to reinstate the Mortgage through loss mitigation programs. Ultimately Plaintiffs defaulted on their forbearance plan, and the Property was relisted for Sheriff's Sale.

However, Plaintiffs filed a Chapter 13 bankruptcy petition on September 24, 2006, which was assigned case no. 06-19093. Aurora filed a Proof of Claim in that case, listing pre-petition arrears of $71,371.46, and a total amount due of $373,562.22. As a result of Plaintiffs' failure to make any post-petition payments on the Mortgage, Aurora filed a motion for relief from the automatic stay on January 9, 2007. The motion was granted by order dated February 8, 2007. Case no. 06-19093 was then dismissed at the confirmation hearing held on February 28, 2007 based on Plaintiffs' failure to: file required schedules, statements, plan and/or summary; make all required pre-confirmation payments to the Trustee; file a feasible plan, income and/or budget

statement; and provide evidence of income.

The Property was relisted for Sheriff's Sale on June 4, 2007. Plaintiffs filed a second Chapter 13 bankruptcy petition[1] on June 4, 2007, which was assigned case no. 07-17739. Aurora filed a Proof of Claim in that case, listing pre-petition arrears of $107,742.46, and a total amount due of $406,612.25. Case no. 07-17739 was dismissed on August 7, 2007, based on Plaintiffs' failure to make all required pre-confirmation payments to the Trustee and provide evidence of income.

Plaintiffs then filed a third Chapter 13 bankruptcy petition on August 13, 2007, which was assigned case no. 07-21457. Aurora filed a Proof of Claim in case no. 07-21457, listing pre-petition arrears of $123,483.69, and a total amount due of $445,360.62. The court entered an order on October 17, 2007, confirming that the Property was not subject to the automatic stay.

Plaintiffs then filed an adversary proceeding to reinstate the automatic stay on October 30, 2007. The automatic stay was reinstated by order entered on November 20, 2007. The order further provided that:

> In the event the case is dismissed, any subsequent filings by the Debtor(s), Jerry M. Taylor and Vanessa H. Taylor, their heirs, assigns or successors shall not impose a stay against, AURORA LOAN SERVICES, INC. as servicer for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., its assigns or successors, by virtue of this order.

On May 29, 2009, the Chapter 13 Trustee filed a motion to dismiss case no. 07-21457 on the following grounds:

> i. Failure of the debtor(s) to comply with the terms of the Plan, in that all required payments to the Trustee have not been made. Since the inception of the Plan, the debtor(s)

---

[1] Plaintiffs also filed a bankruptcy petition in 1987, bearing case no. 87-1664 (SAS).

3

>   is/are in arrears $800.00. This information is current up to and including the date of mailing this certification.
>
> ii. The Plan specifies non-exempt proceeds to the Trustee from sale or refinance of property by 02/15/08. A review of the Trustee's records indicates that the debtor has not complied with said Plan provision.
>
> iii. The last payment received by the Trustee was on 02/05/09 in the amount of $1,000.00.

The Trustee's motion was granted by order entered June 25, 2009.

The Property was relisted for Sheriff's Sale on October 26, 2009. On October 25, 2009, Plaintiffs filed the instant Chapter 13 petition -- their fourth since September 2006. Since the automatic stay was annulled in the prior bankruptcy case, the Sheriff's Sale proceeded as scheduled on October 26, 2009. The plaintiff in the Foreclosure Action was the successful bidder at the Sheriff's Sale, and assigned its bid to Aurora. Aurora took title to the Property by Deed dated November 10, 2009, and recorded in the Monmouth County Clerk's office on December 16, 2009 in Book 8811, Page 7948. The instant bankruptcy case was dismissed by order dated December 21, 2009.

Plaintiffs' counsel sent correspondence to Aurora, dated November 19, 2009, purporting to be a Qualified Written Request ("QWR") pursuant to 12 U.S.C. §2605 (e). Although the purported QWR alleged generally that Plaintiffs believed that Aurora may have misapplied payments or may have assessed improper charges against their account, the purported QWR failed to provide any specific facts to substantiate Plaintiffs' beliefs. Instead, the purported QWR set forth an overly burdensome thirty-seven paragraph demand for documents and information unrelated to any alleged payment misapplication.

The purported QWR was responded to by letter dated January 5, 2010. Notwithstanding

4

the burdensome and irrelevant nature of the purported QWR, each and every paragraph was responded to by Aurora. Ignoring the response to the purported QWR and the previous dismissal of the underlying bankruptcy case, Plaintiffs filed a complaint (the "Complaint") commencing the instant adversary proceeding on January 22, 2010.[2]

The Complaint alleges generally that Plaintiffs believe that Aurora misapplied loan payments and that Plaintiffs have suffered damages. Since Plaintiffs' responses to Aurora's discovery requests are as indistinct as their allegations in the complaint, Aurora now moves for summary judgment to dismiss the Complaint with prejudice.

---

[2] The underlying bankruptcy case later reinstated by order dated February 25, 2010

**LEGAL ARGUMENT**

I. **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings in Bankruptcy Court by Fed.R.Bankr.P. 7056, sets forth the grounds under which summary judgment may be granted in an action. That rule provides, in relevant part, that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
> [Fed.R.Civ.P. 56(c).]

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the matter it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The substantive law governing the case will identify those facts which are material and only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, the court generally resolves all ambiguities and draws all reasonable inferences against the moving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, where, as here, the moving party meets its burden, the burden shifts to the nonmoving party to come forward with the specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Id.* at 576.

A genuine issue is only presented if a reasonable fact-finder could return a verdict for the

nonmoving party based on the evidence presented. *In re Headquarters Dodge, Inc.*, 13 F.3d 674, 679 (3d. Cir. 1993), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. A "mere scintilla of evidence" presented by the non-movant will not defeat summary judgment. *William v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citations omitted.).

Additionally, once discovery is concluded, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, *supra,* 477 *U.S.* at 322.

## II.    Since Plaintiffs have not produced any evidence that they have suffered damages, the Complaint must be dismissed in its entirety.

The Complaint alleges three causes of action: 1) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601, et seq. ("RESPA"); 2) breach of contract and 3) negligence. Each of these causes of action requires a party to prove that it has suffered actual damages.[3]

In its interrogatories to Plaintiffs, Aurora requested that Plaintiffs:

> 12.    State the theory and state the basis for your allegation in Paragraph 57 of the Complaint that you suffered actual damages, identify all documents that support that contention and provide an itemized statement of the actual damages that you claim to have suffered.

In response, Plaintiffs merely reiterated the conclusory allegations of the Complaint:

---

[3] *See* 12 U.S.C. § 2605(f)(1)(A); *Polzo v. County of Essex*, 196 *N.J.* 569, 584 (2008) ("In order to sustain a common law cause of action in negligence, a plaintiff must prove . . . actual damages[.]"); *Cumberland County Improvement Authority v. GSP Recycling Co., Inc., 358 N.J.Super. 484 (App.Div.*2003) (A party bringing a claim for breach of contract has the burden of proving all elements of its cause of action, including damages.)

> Response: We have suffered monetary damages, as a result of Defendant's negligence, Breach of Contract, statuary damages and attorney fees.

This statement is insufficient to withstand Aurora's summary judgment motion. As set forth above, it is Plaintiffs' burden to produce evidence to establish that they have sustained damages. After the close of discovery, they have completely failed to produce any evidence whatsoever. As the Supreme Court stated in *Celotex*, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, *supra*, 477 *U.S.* at 322. Since there is no genuine issue as to this essential element of Plaintiffs' case, summary judgment should be granted dismissing the case in its entirety.

**III.    Plaintiffs RESPA claim must be dismissed.**

Even if Plaintiffs could establish that they had sustained damages, summary judgment should be granted dismissing their RESPA claim. The first count of the Complaint alleges that Aurora violated RESPA by failing to respond to the purported QWR and by failing to credit payments made on the Mortgage.

RESPA defines a QWR as a written correspondence, that:

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) <u>includes a statement of the reasons for the belief</u> of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
> [12 U.S.C. § 2605(e)(1)(B) (emphasis added.).]

In this case, Plaintiffs' counsel sent a letter to Aurora that identified the borrowers' account, but failed to include any statement of reasons for the borrowers' belief that the account

8

was in error. Without a statement of reasons, Plaintiffs' counsel's correspondence cannot fairly be considered to be a qualified written request within the ambit of RESPA.

In *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 *F.Supp.*2d 1156, 1162 (M.D.Ala.1999), the court found that correspondece from a borrower did constitute a qualified written request under RESPA. The letter stated in relevant part:

> I have enclosed the front and back of all mortgage payments made in 1997. You will notice that the January, February and March payments are payable to and cashed by GE Capital. Per letter to me on March 12, 1997, all payments effective 4-1-97 were to be made payable to Dovermuehle [sic] Mortgage.
>
> The April, May and June 1997 payments were made payable to Dovermuehle [sic] and so cashed....
>
> I have also enclosed a copy of the 1996 Form 1098 from GE Capital [account history]. As you will notice, we had no late charges or late payments.
>
> I respectfully request that this matter be corrected promptly and a letter mailed to me stating that such has been corrected. If I do not hear from your department by July 15, 1997, I will be forced to take legal action to preserve my credit and reputation.
> [*Ibid*.]

The clarity and detail of the statement of reasons in this letter is in stark contrast to the purported QWR in this case:

> My client has reported to me that <u>they believe</u> many mortgage payments have been improperly applied or not applied at all. We further believe that Lender <u>may have</u> misapplied Trustee disbursements  Furthermore, Lender <u>may have</u> charged bankruptcy related fees, which <u>may</u> not have been approved by the Bankruptcy Court.
> (Emphasis added.)

In short, the purported QWR completely fails to identify any basis for Plaintiffs' belief that the account was in error. Accordingly, counsel's correspondence cannot be considered to be

9

a QWR as defined by RESPA. *See Rawlings, supra,* at 1162.

Even if counsel's letter is construed as a QWR, Aurora provided a comprehensive thirteen-page response to Plaintiffs' demand for information and documents that bear absolutely no relation to the alleged, but unsubstantiated, payment dispute. RESPA provides that, after receiving a QWR:

> Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall-
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes-
> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes-
> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

Aurora's response to the QWR clearly complies with the statute. As set forth in the response, Aurora specifically denied that any error existed in the handling of Plaintiffs' account. Notwithstanding the overly broad nature of the information request, Aurora responded to each

10

and every request, paragraph-by-paragraph, and supplied all of the additional information required by the statute. Plaintiffs cannot substantiate their claim that Aurora failed to respond to a qualified written request.

Additionally, Plaintiffs have yet to identify any errors in applying payments on their account. In its interrogatories to Plaintiffs, Aurora requested that Plaintiffs:

> State the theory and state the basis for your allegation in Paragraph 13 of the Complaint that you believe you are being charged unauthorized late fees, that your payments are being misapplied and that the Mortgage account is not being properly credited for payments of interest, principal and escrow charges, and identify all documents that support that contention.

Again, their response merely repeated the vague and conclusory allegations of the Complaint:

> Response: The Plaintiffs believes that they are being charged unauthorized late fees, that their payments are being misapplied and that the mortgage account is not being properly credited for payments of interest, principal and escrow charges. see the attached Account History.

Additionally, Aurora requested that Plaintiffs produce "[c]opies of any and all payments made toward the Mortgage, including but not limited to cancelled checks (front and back), money order receipts, wire transfers, etc. In response, Plaintiffs produced a single, unnegotiated check dated July 20, 2010. These discovery responses confirm that there is no genuine issue of fact as to the application of payments to their mortgage account. Summary judgment must be granted, and the RESPA claim must be dismissed.

**IV.    Plaintiffs' contract claim must be dismissed.**

As with their RESPA claim, Plaintiffs claim that Aurora misapplied payments, yet they

11

fail to identify any payments that were allegedly misapplied. In its interrogatories to Plaintiffs, Aurora requested that they:

> State the theory and state the basis for your allegation in Paragraph 63 of the Complaint that Defendant has breached the contract, and did not apply payments pursuant to the note, and identify all documents that support that contention.

They responded:

> Response: Defendant failed to apply payments according to the note: The Note dated June 9, 2004, (paragraph 3) Payments (A) Time and Place of Payments: It states, "each monthly payment will be applied as of its scheduled due date and will be applied to interest before principle. See the attached Mortgage Note and Account History.

This "response" fails to identify any payment that was allegedly misapplied. The Plaintiffs' complete failure of proof of their contract claim requires that summary judgment be granted in Aurora's favor. *Celotex*, *supra*, 477 *U.S.* at 322

### V. Plaintiffs' negligence claim must be dismissed.

Where, as here, a negligence claim is duplicative of a contract claim, the negligence claim is barred by the economic loss doctrine. *Perkins v. Washington Mutual, FSB*, 655 *F.Supp*.2d 463, 471 (D.N.J. 2009). The economic loss doctrine provides that a tort remedy does not arise out of a contractual relationship, unless the breaching party owed an independent duty. *Saltiel v. GSI Consultants, Inc.*, 170 *N.J.* 297, 316 (2002); *Perkins*, *supra*, 655 *F.Supp*.2d at 471 (the economic loss doctrine barred a negligence claim brought by a plaintiff mortgagor against a defendant mortgagee, because both parties were parties to the mortgage contract and no other

duty was owed.). Here, Plaintiffs merely allege that Aurora "negligently misapplied payments".[4] The only duties identified by Plaintiffs are contractual duties set forth in the Mortgage and in the Note. Since Plaintiffs' negligence claims are identical to their RESPA and contract claims, the economic loss doctrine mandates that the negligence claim be dismissed

---

[4] Additionally, Plaintiffs allege that Aurora negligently did not respond completely to the purported QWR. As set forth above, any duty to respond to the purported QWR is a statutory creation. Adding the word "negligently" to an alleged statutory violation does not create a separate cause of action.

**CONCLUSION**

For all of the foregoing reasons, Aurora respectfully requests that this Court grant its motion for summary judgment, and dismiss the Complaint with prejudice.

                                          Tompkins, McGuire, Wachenfeld & Barry
                                          Attorneys for defendant Aurora Loan Services LLC.

                              By:    /s/ Andrew P. Zacharda
Dated: August 4, 2010              Andrew P. Zacharda, Esq.